UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN DZURO,

       Plaintiff,                     CIVIL ACTION NO. 06-13399

      v.                                DISTRICT JUDGE SEAN F. COX

MICHAEL J. ASTRUE,[1]           MAGISTRATE JUDGE VIRGINIA M. MORGAN
COMMISSIONER
OF SOCIAL SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

### I. Introduction

This Social Security case comes before the court on the parties' cross-motions for summary judgment. For the reasons stated below, the court recommends that the Commissioner's motion be denied, that plaintiff's motion be granted in part, and that the matter be remanded for further proceedings with respect to the limitations resulting from plaintiff's impairments.

---

[1] Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Fed. R. Civ. P. 25(d)(1) and 42 U.S.C. § 405(g), he is automatically substituted as the defendant in this civil action.

## II.  Background

In January 8, 2002, plaintiff filed an application for Social Security Disability Insurance Benefits (DIB), alleging that he was disabled due to epilepsy, lower back injuries, and the inability to read and write, with a disability onset date of February 10, 1999.  (Tr. 55-57, 68)  He has a high school education through attending special classes, and has a work history including employment as a dishwasher and clothing store sorter.  (Tr. 74, 78-79)

The Social Security Administration (SSA) denied plaintiff's claim on May 17, 2002.  (Tr. 37-41)  Plaintiff then requested a hearing before an administrative law judge (ALJ).  (Tr. 35) A hearing, at which plaintiff was represented by counsel, was held on October 16, 2003 before ALJ G. Roderic Anderson.  Plaintiff and a Vocational Expert ("VE") testified at the hearing.  (Tr. 370-85)

On March 22, 2004, ALJ Anderson issued a written decision denying plaintiff's claim. (Tr. 226-236)  ALJ Anderson determined that plaintiff had the following impairments: borderline intellectual functioning, seizures, and depression.  (Tr. 235)  Further, ALJ Anderson determined that plaintiff's impairments were "severe" withing the meaning of 20 C.F.R. § 404.1520(a)(4)(ii), but that he did not have an impairment that met or equaled any of the impairments listed in Appendix 1, Subpart P of the Social Security regulations.  (Tr. 235) Taking into account plaintiff's age, education, work history, and residual functional capacity (RFC), as well as the hearing testimony of the VE, ALJ Anderson concluded that plaintiff retained the ability to perform a significant range of "sedentary" work and that there were a

significant number of jobs in the national economy that he could perform.[2]  (Tr. 235-236) Accordingly, the ALJ found that plaintiff was not "disabled" within the meaning of the Social Security Act.  (Tr. 236)

On March 29, 2004, plaintiff filed a request for review of ALJ Anderson's decision with the SSA's Appeals Council.  (Tr. 240)  The Council granted the request and vacated the ALJ's decision on September 30, 2004.  (Tr. 6-8)  The Council found that plaintiff's representative, in connection with the request for review, had submitted evidence showing the existence of an impairment, namely low back pain with upper and lower radiculopathy, not considered by the ALJ.  (Tr. 237) The Council also found that the decision was unclear regarding plaintiff's exceptional functional capacity and that it presented conflicting exertional residual functional capacities in both the decision narrative and the findings.  (Tr. 237)  The Council ordered that the case be remanded so the ALJ could obtain additional evidence concerning plaintiff's musculosketal impairment, give further consideration to plaintiff's maximum residual functional capacity, provide appropriate rationale with specific reference to evidence of record in support of the assessed limitations, and, if warranted, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on plaintiff's occupational base.  (Tr. 238).

---

[2]"Sedentary" work is defined in 20 C.F.R. § 404.1567(a) as follows:
> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

A second hearing, at which plaintiff, again represented by counsel, and a VE testified, was held on March 21, 2005 before ALJ Bennett S. Engelman. (Tr. 376-395)

On October 14, 2005, ALJ Engelman issued a written decision denying plaintiff's claim. (Tr. 19-32) ALJ Engelman determined that plaintiff had the following impairments: disorder of the back with low back pain, a current diagnosed seizure disorder, anger problems, and substance abuse addiction to pain medication . (Tr. 31) Further, ALJ Engelman determined that plaintiff's impairments were "severe" withing the meaning of 20 C.F.R. § 404.1520(a)(4)(ii), but that he did not have an impairment that met or equaled any of the impairments listed in Appendix 1, Subpart P of the Social Security regulations. (Tr. 31) Taking into account plaintiff's residual functional capacity and the testimony of the VE, ALJ Engelman concluded that plaintiff retained the ability to perform his past relevant work. (Tr. 31-32) Accordingly, ALJ Engelman found that plaintiff was not "disabled" within the meaning of the Social Security Act. (Tr. 236) Plaintiff was 42 years-old at the time of ALJ Engelman's decision. (Tr. 32, 219)

On November 22, 2005, plaintiff filed a request for review of ALJ Engelman's decision with the SSA's Appeals Council. (Tr. 15) The Council denied the request on June 27, 2006. (Tr. 8-10) The ALJ Engelman's decision thus became the final determination of the Commissioner.

On July 27, 2006, plaintiff filed suit for review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). As noted above, the matter comes before the court on the parties' cross-motions for summary judgment. Plaintiff contends in his motion that ALJ Engelman erred as a matter of law by failing to properly evaluate the medical records found in the evidence and by

forming an inaccurate hypothetical.  The Commissioner contends that ALJ Engelman's decision is supported by substantial evidence and should thus be affirmed.

### III.  Legal Standards

#### A.  Disability Evaluation

A person is "disabled" within the meaning of the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  Further,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).  The claimant bears the burden of proving that he is disabled.  Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001).

A five-step process is used to evaluate DIB claims.  20 C.F.R. § 404.1520.  In Foster, 279 F.3d at 354 (citations omitted), the Sixth Circuit discussed the process:

> The claimant must first show that she is not engaged in substantial gainful activity.  Next the claimant must demonstrate that she has a "severe impairment."  A finding of "disabled" will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and "meets or equals a listed

> impairment." If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work.

### B.  Standard of Review

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), which provides, in part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989); Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997).  The Sixth Circuit stated in Brainard, 889 F.3d at 681, that "[s]ubstantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Further, "the decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." Key, 109 F.3d at 273.

**IV.  Analysis**

**A.  Accuracy of RFC/Consideration of Treating Physician Opinions**

The term "residual functional capacity" ("RFC")is defined as the most an individual can still do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks.  20 CFR 404.1545, 20 CFR 416.945, SS-R 96-8p.  In this case, ALJ Engelman found that plaintiff:

> retains the residual functional capacity to perform unskilled light exertional level work involving lifting and carrying of objects weighing up to 20 pounds occasionally and ten pounds frequently. He can sit, stand and walk for six hours in an eight hour day. Postural limitations include the avoidance of climbing ladders, ropes, and scaffolds. Environmental limitations include the avoidance of tasks involving hazards, moving machinery and unprotected height. The claimant must avoid more than limited contact with the public and co-workers. [Tr. 32]

Plaintiff argues that the RFC inaccurate because it failed to incorporate all of his physical limitations. Plaintiff's argument that the RFC is inaccurate is dependent on his argument that ALJ Engelman failed to evaluate or give the appropriate weight to the opinions of his treating physician and the other examining physicians.

By arguing that ALJ Engelman failed to evaluate or give appropriate weight to the opinion of his treating physician, plaintiff invokes the "treating physician" rule.  The "treating physician" rule provides as follows:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in your case

> record, we will give it controlling weight.  When we doe not give
> the treating source's opinion controlling weight, we apply the
> factors listed in paragraphs (d)(2)(I) and (d)(2)(ii) of this section,
> as well as the factors in paragraphs (d)(3) through (d)(6) of this
> section in determining the weight to give the opinion.  We will
> always give good reasons in our notice of determination or
> decision for the weight we give your treating source's opinion.

20 C.F.R. § 404.1527(d)(2).  As the Sixth Circuit stated in Walters v. Commissioner of Social Sec., 127 F.3d 525, 529-30 (6th Cir. 1997), "[i]n general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once."  Indeed, 20 C.F.R. § 404.1527(d)(2) provides that a "treating source's" opinion regarding the nature and severity of a claimant's condition is entitled to controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.  However, as suggested by the regulation, the ALJ is not bound by a treating physician's opinion if that opinion is not supported by sufficient clinical findings or is inconsistent with other substantial evidence in the record.  See also Warner v. Commissioner of Social Sec., 375 F.3d 387, 390 (6th Cir. 2004)("Treating physicians' opinions are only given [controlling or substantial] deference when supported by objective medical evidence").

    On April 5, 2004, Dr. Lynn Walker, plaintiff's treating physician, provided a letter regarding plaintiff's lower back pain. (Tr. 269-271)  Dr. Walker opined that plaintiff requires reclining his body with elevation of his feet periodically during the day to relieve the tension and pressure of his back pain. Dr. Walker also opined that plaintiff's back pain is exacerbated

whenever plaintiff sits upright, stands, or walks for more than five or ten minutes. (Tr. 269) Dr. Walker treated plaintiff over a period of time and saw him on a number of occasions. Thus, she is a "treating source" within the meaning of 20 C.F.R. §§ 404.1527, 404.927. When remanding this case, the Appeals Council specifically identified Dr. Walker's letter as evidence of an impairment not considered by ALJ Anderson and ordered that, on remand, the ALJ "obtain additional evidence concerning the claimant's musculosketal impairment, including the records of Dr. Walker as they relate to his musculosketal impairment." (Tr. 238)

ALJ Engelman's decision completely failed to discuss Dr. Walker's letter discussing her opinion regarding plaintiff's limitations, i.e., that plaintiff avoid prolonged sitting. The only time ALJ Engelman even mentioned Dr. Walker's letter in the ruling was when Dr. J. Tofaute's report was described. (Tr. 27) In Wilson v. Commissioner, 378 F.3d 541 (6th Cir. 2004), the Sixth Circuit held that an ALJ's failure to "give good reasons" for the weight given to a treating source's opinion, as required by 20 C.F.R § 404.1527(d)(2), constitutes reversible error, even if the disability determination is otherwise supported by substantial evidence. The Sixth Circuit indicated that such a failure was subject to harmless error analysis, but stated that "[a] court cannot excuse the denial of a mandatory procedural protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely." Id. at 546. Rather, the Court suggested that only a *de minimus* violation of the regulation could constitute harmless error:

- 9 -

> For instance, if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it, a failure to observe § 1527(d)(2) may not warrant reversal. There is also the possibility that if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion, it may be irrelevant that the ALJ did not give weight to the treating physician's opinion, and that failure to give reasons for not giving such weight is correspondingly irrelevant. Or perhaps a situation could arise where the Commissioner has met the goal of § 1527(d)(2)–the provision of the procedural safeguard of reasons–even though she has not complied with the terms of the regulation. However, none of these possibilities is present in the instant case, and the ALJ committed reversible error by depriving Wilson of the procedural right given to him by the agency's regulation.

Id. at 547 (citations omitted).

ALJ Engelman did not acknowledge Dr. Walker's recommendation and did not provide any explanation for declining to give any weight to that recommendation. It was incumbent upon the ALJ under 20 C.F.R § 404.1527(d)(2) to "give good reasons" for his decision to disregard that recommendation. The ALJ erred in failing to do so. Further, the ALJ's failure cannot be deemed harmless error. As displayed in the divergence of opinion among the other examining physicians, as discussed below, Dr. Walker's opinion is not "so patently deficient that the Commissioner could not possibly credit it." Wilson, 378 F.3d 547. As for the other harmless error considerations discussed in Wilson, ALJ Engelman's findings with respect to plaintiff's limitations are not consistent with Dr. Walker's opinion on that matter, and the ALJ did not otherwise "me[et] the goal of § 404.1527(d)(2)." Id. Thus, the ALJ's failure to comply with § 404.1527(d)(2) as to Dr. Walker's opinion constitutes reversible error. In reaching such a conclusion, the court does not mean to suggest that an ALJ must parse through every word of a

treating source's notes and records and provide an explanation for the weight given to each and every finding. However, where, as here, a treating source makes a recommendation that goes directly to the question of what the claimant is physically capable of doing, § 404.1527(d)(2), as discussed in Wilson, compels that the recommendation be given consideration and that an explanation be given as to the weight given to that recommendation.

Likewise, the court finds that ALJ Engelman erred in failing to follow the dictates of the regulations with respect to other medical opinions and findings in the record. In making the RFC assessment, the ALJ must consider any medical opinions from acceptable medical sources that reflect judgments about the nature and severity of the impairments and resulting limitations. 20 CFR 404.1527, 20 CFR 416.927, SS-R 96-2p, SS-R 96-6p. In this case, while the ALJ noted that a number of physicians examined plaintiff or reviewed his file, he never addressed many of those opinions or articulated his basis for accepting or rejecting them.

The ALJ accepted the findings of Dr. Robin Mika, D.O., the State Agency medical consultant, regarding the nature and severity of plaintiff's impairments because "it is consistent with the overall evidence of record." (Tr. 29) Nevertheless, beyond that simple statement, there is no further discussion of Dr. Mika's opinion, even though Dr. Mika specifically noted that he disagreed with the opinions of other physicians. (Tr. 166)

ALJ Engelman appeared to cite approvingly to the findings of Dr. Tofaute several times (Tr. 27, 29), but ultimately the ALJ must have disagreed with Dr. Tofaute. Dr. Tofaute opined that plaintiff would only be able to stand or walk "at least 2 hours in an 8-hour workday" and that plaintiff would only be able to sit "less than six hours in an 8-hour workday." (Tr. 278-279)

Dr. Tofaute also found that plaintiff would never be able to balance and could only occasionally kneel, crouch, crawl and stoop. (Tr. 279)  ALJ Engelman, on the other hand, found that plaintiff retained the ability to "sit, stand and walk for six hours in an eight hour day." (Tr. 32)  ALJ Engelman made no mention of limitations on balancing, kneeling, crouching, crawling, or stooping in his ruling or the clear conflict between his ruling and Dr. Tofaute's opinion.

The psychiatric/psychological evaluation performed by Dr. Matthew Dickson was mentioned by ALJ Engelman when recapping plaintiff's medical history (Tr. 278), but the ALJ appeared to have solely focused on Dr. Dickson's note that "the claimant's anger problem did not prevent him from performing jobs in the past for over ten years." (Tr. 78)  The ALJ failed to address any other part of Dr. Dickson's findings, which included opinions that plaintiff suffered moderate limitations in understanding, remembering and carrying out detailed instructions, making judgments on simple work-related decisions, interacting appropriately with the public, supervisors and co-workers, and responding appropriately to work pressures in a usual work setting or changes in a routine work setting. (Tr. 326-327)

ALJ Engelman did not discuss at all Dr. Thomas Tsai's evaluation of plaintiff or his opinion that plaintiff suffered moderate limitations in maintaining social functioning, concentration, persistence or pace. (Tr. 183)  Nor did the ALJ discuss Dr. Tsai's opinion that plaintiff suffered moderate limitations in his ability to understand, remember or carry out detailed instructions, accept instructions and respond appropriately to criticism, or get along with co-workers and peers without distracting them. (Tr. 187-188)

ALJ Engelman's failure to fully discuss the medical basis for his RFC determination and why he rejected certain opinions is grounds to remand this matter because it impedes meaningful review by this court.  See, e.g., Hurst v. Secretary of Health and Human Services, 753 F.2d 517 (6th Cir. 1985)(articulation of reasons for disability decision essential to meaningful appellate review); see also Bailey v. Commissioner of Social Security, 1999 WL 96920 at **4 (6th Cir.(Ohio))("Thus, an ALJ's decision must articulate with specificity reasons for the findings and conclusions that he or she makes"); Social Security Ruling (SSR) 82-62 at *4 (the "rationale for a disability decision must be written so that a clear picture of the case can be obtained").

In light of the above findings, the court is presented with the question of whether this matter should be remanded for further proceedings, or whether a judicial award of benefits is warranted.  In Faucher v. Secretary of Health and Human Services, 17 F.3d 171, 176 (6th Cir. 1994), the Sixth Circuit stated the following:

> If a court determines that substantial evidence does not support the Secretary's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. . . .  A judicial award of benefits is proper only where the proof of disability is strong and evidence to the contrary is lacking.

Noting the difference in the various medical opinions found in the record, and the fact that the ALJ only reached step four of the five-step process is used to evaluate DIB claims, this court cannot say, on the record before it, that the evidence conclusively establishes that plaintiff is

unable engage in substantial gainful activity such that an immediate award of benefits by the district court is warranted.

### V. Conclusion

For the reasons stated above, the court finds that the ALJ's decision is not supported by substantial evidence. Further, the court finds, that the record does not support a judicial award of disability benefits. See Faucher v. Secretary of Health and Human Services, 17 F.3d 171, 176 (6th Cir. 1994)("If the court determined that substantial evidence does not support the Secretary's decision, the court can reversed the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequate establishes a plaintiff's entitlement to benefits"). Accordingly, the court recommends that the Commissioner's motion for summary judgment be **DENIED**, that plaintiff's cross-motion for summary judgment be **GRANTED** in part, and that this matter be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report and Recommendation.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).

Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

                                        s/Virginia M. Morgan  
                                        Virginia M. Morgan  
                                        United States Magistrate Judge

Dated:  April 30, 2007

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on April 30, 2007.

                                        s/Jane Johnson  
                                        Case Manager to  
                                        Magistrate Judge Virginia M. Morgan